**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| ROSELLE VEGA ROMERO, AS ADMINISTRATOR OF THE ESTATE OF JOAMEL JIMENEZ-VEGA, <br><br> **Plaintiff,** <br><br> v. <br><br> CITY OF DALEVILLE, a government entity; JOHN CRAWFORD, individually; DEFENDANTS JOHN DOES 1 – 5 (Arresting Officer Does), individually; DEFENDANTS JOHN DOES 6 – 10 (Intake and Custody Does), individually; DEFENDANT MEDICAL PROVIDER DOE, an entity, and DEFENDANTS JOHN DOES 11 – 15 (Medical Staff Does), individually, <br><br> **Defendants.** | ) CIVIL ACTION NO: <br> ) <br> ) <br> ) _____ <br> ) <br> ) <br> ) **Jury Trial** <br> ) **Demanded.** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT**

Plaintiff, by and through his undersigned attorneys, states the following as the basis for the relief sought:

**PREFACE**

This action arises from the preventable custodial death of Joamel Jimenez-Vega at the hands of the Daleville Police Department. On May 14, 2025, Mr. Jimenez-Vega's family sought help for his acute mental health crisis, explicitly warning officers of his condition and pleading for caution. Instead of receiving the medical care and suicide prevention protocols mandated by law, Mr. Jimenez-Vega was subjected to excessive physical force resulting in documented blunt force trauma and was subsequently abandoned in a jail cell with known hazards. Less than eight hours after his

arrest, he was found dead by hanging – a tragedy caused by the Defendants' gross negligence, deliberate indifference, and failure of controls at every level of his custody. The Plaintiff, as Personal Representative of the Estate, brings this action under 42 U.S.C. § 1983 and Alabama state law to hold the Defendants accountable for their systemic failures and malicious conduct.

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Roselle Vega Romero became Administrator of THE ESTATE OF JOAMEL JIMENEZ-VEGA, deceased, by proper order of the Dale County Probate Court on December 3, 2025. The Decedent, Joamel Jimenez-Vega, was a resident of Dale County, Alabama, at the time of his death on May 14, 2025. The Plaintiff brings this action on behalf of the Decedent's estate and his lawful heirs/beneficiaries.

2.      The Defendant, CITY OF DALEVILLE, is a municipality organized and existing under the laws of the State of Alabama. At all times relevant to this Complaint, the City of Daleville owned, operated, and maintained the Daleville Police Department and the Daleville City Jail, and was responsible for the hiring, training, supervision, discipline, and retention of the individual police officers and jailers named herein.

3.      Defendant JOHN CRAWFORD was, at all times material hereto, the Chief of Police for the City of Daleville. He is sued in his Individual Capacity for his acts and omissions committed beyond his authority or in bad faith. At all relevant times, he was responsible for the hiring, training, supervision, and discipline of the officers named herein.

4.      Defendants JOHN DOES 1 through 5 are the specific, yet currently unidentified, police officers of the City of Daleville who were dispatched to the Decedent's parents' home on May 14, 2025, at approximately 4:30 PM. These Defendants are sued in their Individual Capacities. These Defendants are the specific individuals who received the verbal warning from Ms. Cardona

2

regarding the Decedent's bipolar diagnosis and who physically transported him to the jail. Plaintiff avers that the true identities of these officers are known to the Defendant City of Daleville and are contained within the arrest reports and dispatch logs, but are currently withheld from the Plaintiff. Plaintiff intends to discover their true names and amend this Complaint to substitute them immediately.

5.     Defendants JOHN DOES 6 through 10 are the specific, yet currently unidentified, jailers or correctional officers employed by the City of Daleville who were on duty and responsible for the intake processing and cell assignment of the Decedent between 4:30 PM and 11:45 PM on May 14, 2025. These Defendants are sued in their Individual Capacities. These Defendants are the specific individuals who failed to screen the Decedent for suicide risk and who failed to monitor him during the eight-hour period preceding his death. Plaintiff avers that these identities are uniquely within the control of the Defendants and will be substituted by amendment once ascertained.

6.     Defendant MEDICAL PROVIDER DOE: Plaintiff sues the specific, yet currently unidentified, private corporation, medical group, or business entity (if any) that held a contract to provide medical/mental health services, visiting nurse services, or on-call medical direction to the Daleville City Jail on May 14, 2025. Plaintiff explicitly avers that if the City of Daleville contracted out its medical duty to a third party, that entity is liable for the systemic failure to screen and treat the Decedent.

7.     Defendants JOHN DOES 11 through 15 are the specific, yet currently unidentified, nurses, physicians, or medical technicians (if any) who were either present at the jail, on-call via telephone, or responsible for medical oversight of detainees on May 14, 2025. These Defendants are sued in their Individual Capacities.

8.     Plaintiff is genuinely ignorant of the true identities of Defendants John Does 1 through 15. Prior to filing this action, Plaintiff exercised due diligence to ascertain their identities by submitting a formal public records request to the City of Daleville on January 29, 2026. On March 6, 2026, the City formally denied this request, claiming the records are shielded by state investigative privilege. Because the Defendant City exercises exclusive control over the incident reports, shift rosters, and video footage, Plaintiff must temporarily utilize fictitious party pleading until these real, specifically described individuals can be named through expedited discovery.

9.     This action arises under the Constitution and laws of the United States, specifically the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

10.     This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Venue is proper in the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred within Dale County, Alabama, which is located within the Middle District.

## STATEMENT OF FACTS

12.     On May 14, 2025, the Decedent, Joamel Jimenez-Vega, was a 25-year-old resident of Dale County, Alabama. He was the loving father of a four-year-old daughter and the expectant father of a second child with his fiancée, Lydia Cardona.

4

13.    Mr. Jimenez-Vega suffered from a diagnosed mental health condition, specifically Bipolar Disorder. On the afternoon of May 14, 2025, he experienced an acute mental health crisis while at his parents' home.

14.    In response to this crisis, his fiancée, Ms. Cardona, contacted the Daleville Police Department for assistance. Upon arrival, Defendants John Does 1–5 (Arresting Officers) were explicitly and repeatedly warned by Ms. Cardona of Mr. Jimenez-Vega's condition.

15.    Ms. Cardona specifically informed Defendants John Does 1–5 that Mr. Jimenez-Vega was diagnosed as bipolar and pleaded with them to exercise caution. By doing so, Ms. Cardona provided these Defendants with actual notice of the Decedent's serious medical and mental health needs, as well as his heightened risk for self-harm.

16.    Despite this clear and urgent warning, Defendants John Does 1–5 arrested Mr. Jimenez-Vega at approximately 4:30 PM and transported him to the Daleville City Jail.

17.    Upon information and belief, during the course of his arrest and subsequent transport, Defendants John Does 1–5 subjected Mr. Jimenez-Vega to excessive physical force. An official autopsy performed by the Alabama Department of Forensic Sciences documented blunt force injuries, including red contusions on his upper left, upper right, and lateral left chest, as well as abrasions on his back and right knee.

18.    Further evidence of physical trauma was observed by the Decedent's family at his funeral viewing, where they photographed significant bruising and swelling on his face and head. These injuries are inconsistent with the official manner of death by hanging alone and are indicative of a physical altercation involving Defendants John Does 1–5 and/or Defendants John Does 6–10 (Jailers/Correctional Officers).

19.     Upon Mr. Jimenez-Vega's arrival at the Daleville City Jail, Defendants John Does 6–10 failed to conduct an adequate medical or mental health intake screening. Despite the actual notice provided by Ms. Cardona to the arresting officers regarding his mental state, Defendants John Does 6–10 failed to classify him as a detainee at high risk for self-harm.

20.     Defendants John Does 6–10 failed to implement necessary suicide prevention protocols. Specifically, they failed to place Mr. Jimenez-Vega on suicide watch or conduct the continuous monitoring required for high-risk detainees. Furthermore, they failed to ensure his cell was free of accessible hazards or provide tear-away safety attire; instead, they allowed him to retain possession of standard-issue bed linens, which he ultimately used as a ligature to suspend himself by the neck.

21.     Less than eight hours after his arrest, at approximately 11:45 PM, Mr. Jimenez-Vega was found hanging in his cell. He was pronounced dead on May 14, 2025, with the cause of death determined to be asphyxia due to hanging.

22.     Following this tragic event, Mr. Jimenez-Vega's father made a direct request to the Daleville Police Department to view his son's body. Defendants John Does 6–10 and/or their supervisors summarily denied this request, compounding the family's grief and suffering.

## <u>COUNT I</u>

**42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Needs as to All Defendants**

23.     Plaintiff restates each and every material allegation previously stated by reference as though fully set forth herein.

24.     Following his arrest and completion of booking into the Daleville City Jail, Mr. Jimenez-Vega was a pretrial detainee entitled to protection under the Due Process Clause of the

Fourteenth Amendment, including the right to adequate medical and mental health care and to be protected from known risks of self-harm.

25.    Defendants John Does 1–5, as arresting officers, had actual, subjective knowledge of Mr. Jimenez-Vega's serious mental health condition and acute risk of self-harm, which was expressly communicated to them by his fiancée prior to his arrest.

26.    It was standard practice and required procedure at the Daleville City Jail for arresting officers to communicate known medical and mental health information, including suicide risk, to jail intake staff during the booking process. Consistent with that practice, the warning regarding Mr. Jimenez-Vega's mental health condition and risk of self-harm was communicated to Defendants John Does 6–10 during intake and custody.

27.    In addition to this communicated warning, Mr. Jimenez-Vega exhibited observable behaviors during booking and intake consistent with an acute mental health crisis, including visible emotional distress and abnormal or erratic behavior, placing jail and medical staff on actual notice of his serious mental health needs.

28.    Defendants John Does 6–10, acting as jailers and custodial officers, failed to conduct an adequate medical or mental health intake screening, failed to implement suicide-prevention measures, and failed to provide heightened observation or monitoring appropriate for a detainee known to be at substantial risk of self-harm.

29.    Defendants further acted with deliberate indifference by housing Mr. Jimenez-Vega in a cell containing known anchor points for hanging and by permitting him to retain standard-issue bed linens and other ligature materials, despite the obvious and substantial risk that he would use those items to harm himself.

7

30.     The Defendant City of Daleville and the Chief of Police in his Individual Capacity acted with deliberate indifference by maintaining customs, policies, or practices that failed to require meaningful suicide-risk screening, failed to mandate appropriate monitoring of mentally ill detainees, and failed to ensure the removal of ligatures and anchor points for detainees at risk of self-harm.

31.     Defendant Medical Provider Doe and Defendants John Does 11 – 15 (Medical Staff Does) acted with deliberate indifference by failing to conduct a competent medical assessment and by ignoring the obvious signs of mental health crisis, effectively abdicating their role as medical providers.

32.     Defendants failed to enforce generally accepted correctional and medical standards regarding intake screening, suicide prevention, and monitoring of mentally ill detainees.

33.     The failure to have or enforce a mandatory, functional mental health intake form or suicide watch protocol created a direct causal link between Defendants' deliberate indifference and the violation of Mr. Jimenez-Vega's Fourteenth Amendment rights.

34.     The system of intake and classification at the Daleville City Jail was so deficient that it demonstrated a deliberate indifference to the medical needs of mentally ill detainees as a class, including Mr. Jimenez-Vega. The Defendants knew or should have known that placing a detainee with known a mental health diagnosis in a cell with anchor points for hanging, while permitting him unrestricted access to potential ligatures such as standard-issue bed linens, would result in an unreasonably-increased risk of suicide by the detainee.

35.     As a direct and proximate result of the deliberate indifference of both the individual officers and the entity Defendants, in violation of the Fourteenth Amendment, Mr. Jimenez-Vega suffered pain, mental anguish, and death.

## COUNT II

### 42 U.S.C. § 1983 - Excessive Force as to Defendants John Does 1 – 10

36.     Plaintiff restates each and every material allegation previously stated by reference as though fully set forth herein.

37.     At all times relevant to this count, Mr. Jimenez-Vega had a clearly established constitutional right to be free from the use of excessive and unreasonable force by law enforcement officers, protected by the Fourth Amendment during his arrest and transport and by the Fourteenth Amendment following his placement in custody.

38.     Upon information and belief, during the arrest and subsequent detention on May 14, 2025, the Defendant Officers subjected Mr. Jimenez-Vega to significant physical force that was objectively unreasonable and unnecessary under the circumstances.

39.     This use of force is evidenced by the official autopsy, which documented "minor blunt force injuries," including red contusions on his upper left chest, upper right chest, and the lateral left chest near the axilla, as well as abrasions on his right knee and back.

40.     Further evidence of this excessive force was observed by the Decedent's family, who documented significant bruising and swelling on his face and head – injuries inconsistent with the official ruling of death by hanging and indicative of a physical altercation.

41.     At the time this force was applied, Mr. Jimenez-Vega was unarmed, secured in custody, and suffering from an acute mental health crisis. He posed no immediate threat to the safety of the officers or others that would justify such a degree of physical force.

42.     The actions of the Defendants were malicious, sadistic, and undertaken for the purpose of causing harm rather than in a good-faith effort to maintain or restore discipline.

43.     To the extent force was applied after Mr. Jimenez-Vega had been secured and placed under custodial control, such force violated the Fourteenth Amendment because it was applied maliciously, sadistically, and for the purpose of causing harm rather than in a good-faith effort to maintain or restore order.

44.     As a direct and proximate result of this excessive force in violation of the Fourth and Fourteenth Amendments, Mr. Jimenez-Vega suffered physical pain, bodily injury, and mental anguish prior to his death.

## COUNT III

**42 U.S.C. § 1983 – *Monell* Liability / Failure to Train and Supervise as to Defendants City of Daleville and John Crawford**

45.     Plaintiff restates each and every material allegation previously stated by reference as though fully set forth herein.

46.     At all times relevant to this action, Defendant City of Daleville, through its policymakers, including Defendant John Crawford, owed a duty to properly hire, train, supervise, and discipline its police officers and jail personnel regarding the constitutional use of force and the handling of individuals experiencing acute mental health crises, including detainees at risk of self-harm.

47.     The constitutional violations suffered by Mr. Jimenez-Vega were caused by official policies, customs, and practices of the City of Daleville that were in effect at the time of the incident. These included, but were not limited to, the absence of adequate written or enforced policies requiring meaningful suicide-risk screening at intake, the absence of mandatory suicide-watch or heightened-monitoring protocols for mentally ill detainees, and the failure to require the removal of ligatures and anchor points from cells used to house detainees at risk of self-harm.

48.     The City of Daleville further maintained policies, customs, or practices that failed to provide adequate training to officers and jail staff on de-escalation techniques, the proper use of force, and the safe handling of individuals known to be suffering from Bipolar Disorder or other serious mental health conditions, both during arrest and during custodial detention.

49.     The need for such training and policies was obvious. Defendants knew to a moral certainty that their officers and jail staff would routinely encounter individuals experiencing mental health crises and detainees at heightened risk of suicide, yet deliberately failed to equip them with the training, guidance, and safeguards necessary to prevent the use of excessive force and to protect detainees from self-harm.

50.     On information and belief, prior to the death of Mr. Jimenez-Vega, the City of Daleville had notice of the substantial risk posed by these policy failures through prior incidents, complaints, or attempts involving detainee self-harm, inadequate intake screening, excessive force, or custodial safety failures, or through the obviousness of the risk created by housing mentally ill detainees without meaningful screening or monitoring. Despite this notice, the City took no adequate corrective action.

51.     Defendant John Crawford, as Chief of Police and a final policymaker for the City of Daleville with respect to training, supervision, and discipline, acted with deliberate indifference by failing to implement, enforce, or correct policies and practices necessary to protect the constitutional rights of detainees and by tolerating a culture in which officers were not meaningfully supervised or disciplined for excessive force or custodial misconduct.

52.     The City of Daleville further maintained a custom or practice of failing to adequately investigate, discipline, or remediate incidents involving excessive force or custodial abuse, thereby

11

ratifying unconstitutional conduct and creating an environment in which officers reasonably believed such conduct would go unpunished.

53.    The absence of adequate suicide screening, monitoring, de-escalation training, and meaningful supervision was the moving force behind the constitutional violations suffered by Mr. Jimenez-Vega, including the use of excessive force and the deliberate indifference to his serious medical and mental health needs.

54.    As a direct and proximate result of these policies, customs, and failures to train and supervise, Mr. Jimenez-Vega was subjected to unconstitutional force and unsafe conditions of confinement, causing him pain, injury, mental anguish, and ultimately death.

## COUNT IV

### Ala. Code § 6-5-410 – Wrongful Death as to All Defendants

55.    Plaintiff restates each and every material allegation previously stated by reference as though fully set forth herein.

56.    At all times relevant to this action, the Defendants owed a duty of care to the Decedent, Joamel Jimenez-Vega, to keep him reasonably safe while in their custody, to provide him with necessary medical and mental health care, and to refrain from the use of excessive and unjustified force.

57.    The death of Mr. Jimenez-Vega was the proximate result of the neglect, carelessness, or unskillfulness of the Defendant City of Daleville and its agents, officers, or employees. Specifically, the City and its agents were unskillful and negligent in:

      a.  Failing to properly screen Mr. Jimenez-Vega for suicide risk despite actual notice of his condition;

      b.  Failing to classify him as a high-risk detainee;

12

c.  Failing to house him in a cell free of anchor points and failing to provide tear-away clothing; and

d.  Failing to conduct adequate observations or monitoring of his cell.

58.    The acts and omissions of Defendants John Does 1 – 15 and the Chief of Police (Individual Capacity) were not merely negligent but were committed willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law.

59.    Despite the clear and desperate pleas of the Decedent's fiancée, the individual officers willfully ignored the known risk of self-harm.

60.    The infliction of blunt force trauma to the Decedent's chest and head constitutes a willful and malicious battery that falls outside the scope of legitimate law enforcement duties.

61.    As a direct and proximate result of the wrongful acts, omissions, and misconduct described above, Mr. Jimenez-Vega died on May 14, 2025.

62.    Pursuant to the Alabama Wrongful Death Act, Ala. Code § 6-5-410, the Plaintiff is entitled to and hereby demands punitive damages against the Defendants in an amount sufficient to punish them for their wrongful conduct and to deter them and others from similar conduct in the future.

## COUNT V

### Assault and Battery as to Defendants John Does 1 – 10

63.    Plaintiff restates each and every material allegation previously stated by reference as though fully set forth herein.

64.    On May 14, 2025, the Defendant Officers intentionally and wrongfully touched, struck, and injured Mr. Jimenez-Vega without his consent and without lawful justification.

13

65.     During the course of his arrest and detention, the Defendants subjected Mr. Jimenez-Vega to physical force that resulted in documented bodily injury.

66.     This unconsented physical contact caused specific injuries confirmed by the official autopsy, including red contusions on his upper left chest, upper right chest, and the lateral left chest near the axilla, as well as abrasions on his right knee and back.

67.     The physical assault was further evidenced by significant bruising and swelling on Mr. Jimenez-Vega's face and head observed by his family, injuries which are inconsistent with a death by hanging alone and indicative of a physical altercation.

68.     The Defendants' use of force was not accidental but was committed willfully, maliciously, in bad faith, and beyond their authority as law enforcement officers.

69.     As a direct and proximate result of this assault and battery, Mr. Jimenez-Vega suffered physical pain, bodily injury, and mental anguish prior to his death.

### COUNT VI

**Negligent Hiring and Training as to Defendant City of Daleville and Wanton Supervision as to Defendant John Crawford**

70.     Plaintiff restates each and every material allegation previously stated by reference as though fully set forth herein.

71.     The Defendant City of Daleville and the Chief of Police owed a duty to the public, including the Decedent, to exercise reasonable care in the hiring, training, supervision, and retention of their police officers and jail staff. This duty included ensuring that officers were competent to handle individuals in mental health crises and were trained to refrain from the use of excessive force.

72.     The Defendant City of Daleville breached this duty through the neglect, carelessness, and unskillfulness of its agents and administration.

14

a. The City failed to adequately train its officers on the mandatory booking procedures for mentally ill detainees, resulting in a failure to classify Mr. Jimenez-Vega as high-risk despite actual notice of his Bipolar Disorder.

b. The City failed to ensure that jail facilities were safe and free of anchor points for hanging, and failed to enforce protocols regarding the removal of potential ligatures such as standard-issue bed linens.

c. The City negligently retained officers who were prone to using excessive force, as evidenced by the physical injuries inflicted upon the Decedent during his arrest and detention.

73. The Defendant Chief of Police acted with wantonness – a reckless conscious disregard for the rights and safety of others.

a. The Chief knew or should have known that failing to implement or enforce suicide prevention protocols, such as continuous monitoring or tear-away clothing, would likely result in the death of a detainee.

b. The Chief consciously disregarded the risk of police brutality by failing to supervise officers or investigate uses of force, creating an environment where officers felt emboldened to inflict the blunt force trauma observed on Mr. Jimenez-Vega's body.

74. As a direct and proximate result of the Defendants' negligent and wanton hiring, training, and supervision, Mr. Jimenez-Vega was subjected to unconstitutional conditions of confinement and excessive force, resulting in his physical suffering and death.

15

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, as Personal Representative of the Estate of Joamel Jimenez-Vega, respectfully demands judgment against the Defendants and prays for the following relief:

a)      An award of compensatory damages under 42 U.S.C. § 1983 and applicable survivorship principles, in an amount to be determined by the jury, for the Decedent's physical pain, bodily injury, and mental anguish suffered prior to his death, as well as for all other compensable injuries recoverable under federal law. Plaintiff does not seek compensatory damages under the Alabama Wrongful Death Act.

b)      An award of punitive damages pursuant to the Alabama Wrongful Death Act, Ala. Code § 6-5-410, against the Defendants for the wrongful death of Mr. Jimenez-Vega, and an award of punitive damages against the individual Defendants under 42 U.S.C. § 1983, in amounts sufficient to punish Defendants for their willful, malicious, and reckless conduct and to deter them and others from similar misconduct in the future.

c)      An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable provisions of law.

d)      Trial by jury on all claims and issues so triable.

e)      Such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted this 13th day of April, 2026.

/s/ Calvin J. Whaley
Calvin J. Whaley (WHA018)
Benjamin A. Irwin (IRW003)
Attorneys for Plaintiff
**CHERRY & IRWIN, P.C.**
163 West Main Street
Dothan, Alabama 36301
(334) 793-1000
Cal@cherryirwin.com
Ben@cherryirwin.com

## JURY DEMAND

Plaintiff hereby respectfully demands a trial by struck jury for all issues involved in this case.

/s/ Calvin J. Whaley
Calvin J. Whaley (WHA018)

17